UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
NATHAN HENRY,                       :
CORINNA LASZLO-HENRY,               :
              Plaintiffs,           :
                                    :
    v.                              :        CA 09-332 S
                                    :
RICHARD B. SHEFFIELD, BRIAN G.      :
BARDORF, WILLIAM R. HARVEY,         :
QUENTIN ANTHONY, MARY JO CARR,      :
HARVEY CARR & HADFIELD,             :
DOUGLAS DAVIES HENRY,               :
MARGARET KEMP HENRY, individually   :
and as Executrix of the Estate of  :
David Vaughan Henry and as         :
constructive trustee over certain  :
property for the benefit of        :
Nathan Henry and Corinna           :
Laszlo-Henry,                       :
              Defendants.           :
```

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

This is an action for equitable restitution and to recover money damages arising out of the alleged wrongful defeat of Plaintiffs' inheritance under their grandfather's Last Will and Testament. See Amended Complaint (Docket ("Dkt.") #12) at 1. Before the Court is the Motion to Dismiss (Dkt. #17) ("Motion to Dismiss or "Motion") filed by Defendant Margaret Kemp Henry ("Defendant" or "Peggy"[1]) based on (1) lack of personal jurisdiction and (2) failure to state a claim against her for breach of fiduciary duty.

---

[1] For the most part, the Court uses first names, as do the parties in their filings, for clarity.

This matter has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  A hearing was held on March 18, 2010.  After listening to oral argument, reviewing the memoranda submitted, and performing independent research, I recommend that the Motion to Dismiss be denied.

## Facts and Travel

Plaintiffs Nathan Henry ("Nathan") and Corinna Laszlo-Henry ("Corinna") (collectively "Plaintiffs") are the grandchildren of Eugene B. Henry ("Captain Henry").  See Amended Complaint ¶¶ 11, 13.  They are the children of one of Captain Henry's two sons, David Vaughan Henry ("David"), from his previous marriages.  See id. ¶¶ 12-13.  Peggy is David's widow from his third marriage. Id. ¶ 14.

Defendant Richard B. Sheffield ("Sheffield") was Captain Henry's lawyer.  Id. ¶ 15.  Sheffield drafted and witnessed the execution of the Last Will and Testament of Captain Henry dated August 21, 1992 (the "Will"), and a Codicil thereto dated December 2, 1994 (the "Codicil").  Id. ¶ 15; see also id., Exhibit ("Ex.") A (Will), Ex. B (Codicil).  The Will created two testamentary trusts for the Captain's sons, David and Douglas Davies Henry ("Douglas").  See id. ¶ 16.  The Codicil amended and restated the dispositive terms of the trusts.  Id.  The David Vaughan Henry Trust (the "DVH Trust") was amended and restated in

pertinent part to read as follows:

> The trustee shall pay the net income to my son, David Vaughan Henry, at least quarterly and so much of the principal, whether the whole or in lesser amount as my trustee in his sole discretion determines.  In exercising this discretionary power, my trustee may but need not consider any other resource of my son and shall give primary consideration to the needs of my son.
>
> Upon my son's death, *or five years from the date of my decease*, *whichever shall occur first*, my trustee *shall distribute all property then belonging to the principal of the trust to such of his descendants* as shall then be living, in equal shares, <u>per stirpes</u>.

<u>Id.</u>; <u>see also</u> <u>id.</u>, Ex. B.  The Douglas Davies Henry Trust (the

"DDH Trust") was amended and restated in pertinent part to read

as follows:

> The Trustee shall pay the net income to my son, Douglas Davi[e]s Henry, at least quarterly and so much of the principal, whether the whole or in lesser amount as my trustee in his sole discretion determines.  In exercising this discretionary power, my trustee may but need not consider any other resource of my son and shall give primary consideration to the needs of my son.
>
> Upon my son's death or five years from the date of my decease, whichever shall occur first, my trustee shall distribute all property then belonging to the principal of the trust to my son, if living; or, if not living, to my daughter in law, MARY ELLEN HENRY, if living, and not separated nor divorced; or, if not living, or separated or divorced, to my said son's descendants as shall then be living, in equal shares, <u>per stirpes</u>.
>
> ....

Amended Complaint ¶ 16; <u>see also</u> <u>id.</u>, Ex. B.  The DDH Trust is

not at issue in this proceeding.  <u>See</u> Amended Complaint ¶ 16.

Captain Henry died on June 21, 1995, in Newport, Rhode

Island.  Id. ¶ 17.  On or about July 6, 1995, Douglas, as
executor of Captain Henry's estate, see id. ¶ 20-21; id., Ex. A,
filed a petition in the Probate Court for the Town of Portsmouth,
Rhode Island (the "Probate Court"), to admit the Will and Codicil
to probate.  See Amended Complaint ¶ 20; see also id., Ex. C
(Probate Court petition).  Sheffield entered his appearance on
behalf of Douglas.  See Amended Complaint ¶ 21.

     Sheffield also filed an affidavit dated July 6, 1995 (the
"Sheffield Aff."), which purports to describe an error he made in
the preparation of the Codicil.  Id. ¶¶ 22-23; see also id., Ex.
D (Sheffield Aff.).  Sheffield stated that "Eugene B. Henry
instructed me to make the provision with respect to trust income
for David Vaughan Henry the same as provided for Dou[g]las Davies
Henry," Amended Complaint ¶ 23 (quoting id., Ex. D ¶ 5); that
"[i]n the typing of said Codicil, certain words were
inadvertently omitted from the second paragraph of the David
Vaughan Henry Trust ...," id. (quoting id., Ex. D ¶ 7)(alteration
in original); and that "Eugene Henry intended that his sons,
David and Douglas, *with respect to the net income* from their
respective trusts, were to be treated equally," id. (quoting id.,
Ex. D ¶ 8).  According to the Sheffield Aff., in order "to
accurately reflect the intention of Eugene B. Henry," id., the
DVH trust should provide as follows:

     The trustee shall pay the net income to my son, David

4

> Vaughan Henry, at least quarterly and so much of the
> principal, whether the whole or in lesser amount as my
> trustee in his sole discretion determines.  In exercising
> this discretionary power, my trustee may but need not
> consider any other resource of my son and shall give
> primary consideration to the needs of my son.
>
> Upon my son's death or five years from the date of my
> decease, whichever shall occur first, my trustee shall
> distribute all property then belonging to the principal
> of the trust *to my son, if living; or, if not living, to
> my said son's descendants* as shall then be living, in
> equal shares, <u>per stirpes</u>.

<u>Id.</u>; <u>see also</u> <u>id.</u>, Ex. D ¶ 9.  By decree dated July 11, 1995 (the

"1995 Decree"), the Probate Court admitted the Will, as amended

by the Codicil, and appointed Douglas as the Executor of the

Captain Henry's estate.  <u>Id.</u> ¶ 27; <u>see also</u> <u>id.</u>, Ex. E (1995

Decree).  Relying on the Sheffield Aff., the Probate Court also

found that "by error" certain words were omitted from the second

paragraph of the DVH Trust as set forth in the Codicil and that

"to correctly reflect the intention" of Captain Henry the Codicil

had to be changed.  Amended Complaint ¶ 27 (quoting <u>id.</u>, Ex. E).

The portion of the Will and Codicil including the DVH Trust were

altered to read:

> Upon my son's death or five years from the date of my
> decease, whichever shall first occur, my trustee shall
> distribute all property then belonging to the principal
> of the trust to my son, if living; or, if not living, to
> such of his descendants as shall be living, in equal
> shares, <u>per stirpes</u>.

<u>Id.</u>, Ex. E ¶ 2; <u>see also</u> <u>id.</u> ¶ 3.  Neither Nathan nor Corinna

received notice of the Probate Court proceeding.  Amended

Complaint ¶¶ 25, 29.  No guardian ad litem was appointed for Nathan, who was a minor at the time of the Probate Court's action in 1995.  Id. ¶¶ 25, 29.

The 1995 Decree changed the contingencies in the dispositive terms of the DVH Trust.  Id. ¶ 28.  Specifically, the 1995 Decree altered Nathan's and Corinna's remainder interest from being contingent upon their survival for five years after Captain Henry's death to being contingent upon David's death within five years after Captain Henry's death.  Id.  Because David survived his father by more than five years, the 1995 Decree operated to eliminate Nathan's and Corinna's remainder interest under the DVH Trust.  Id.  But for the 1995 Decree, the remainder of the DVH Trust would have been administered for the benefit of Nathan and Corinna and later distributed to Corinna and in continuing trust for the benefit of Nathan.[2]  See id.

Captain Henry's estate was administered, and the DVH Trust administered and distributed, based on the 1995 Decree.  Amended Complaint ¶ 29.  Douglas paid the debts of Captain Henry's estate and distributed the residue in part to the Testamentary Trustee of the DVH Trust.  Id. ¶ 30.  In or about June of 2000, the Testamentary Trustee distributed the remainder of the DVH Trust

---

[2] Nathan was born in 1988 and was still a minor five years after the death of his grandfather, Captain Henry, in 1995.  See Amended Complaint ¶¶ 13, 18, 34.

6

outright and free of trust to David as the 1995 Decree provided rather than to Nathan and Corinna as the 1992 Will and 1994 Codicil expressly provided.  See id.  The remainder of the DVH Trust was approximately $160,000 at the time of the distribution to David in June 2000.  Id. ¶ 32.

By the time of the final distribution of the DVH Trust in 2000, David had developed early onset Alzheimer's Disease.  Id. ¶ 33.  Knowing that he was or would become disabled and possibly require nursing home care, David and Peggy undertook an estate planning process whereby David transferred assets out of his name to Peggy.  David and Peggy did so for the purpose of qualifying David for public benefits.  Id.  Among the assets that David transferred to Peggy were monies that David had received from the DVH Trust.  Id.  Some transfers were made by Peggy to herself acting as David's attorney in fact under a purported durable power of attorney dated in or about April of 2004.  Id.

After attaining the age of majority, Nathan on November 20, 2008, moved that the Probate Court reopen Captain Henry's estate and vacate the 1995 Decree.  Id. ¶ 34-35.  Corinna subsequently joined in Nathan's arguments.  See id. ¶ 35.  Douglas and David, then acting through Peggy as his purported attorney in fact, objected and opposed Nathan's attempt to recover his inheritance. Id.  Following a hearing on January 14, 2009, the Probate Court vacated the 1995 Decree to the extent that it purported to change

7

the terms of the DVH Trust.  Id. ¶ 36; see also id., Ex. F
(January 22, 2009, Order of the Probate Court (the "2009
Order")).  Douglas and David, again acting through Peggy as his
purported attorney in fact, appealed the 2009 Order to the Rhode
Island Superior Court for Newport County (the "Superior Court").
The appeal suspended the 2009 Order by operation of § 33-23-2 of
the Rhode Island General Laws.[3]  See Amended Complaint ¶ 37.
Thus, Nathan and Corinna were restrained by law from seeking any
relief during the pendency of the appeal.  See id.

David died on February 16, 2009.  Id. ¶ 38.  By order of the
District Court for Huerfano County, Colorado, Peggy was appointed
the Executrix of David's estate.  Id. ¶ 39; see also id., Ex. G
(September 11, 2009, Order Admitting Will to Formal Probate and
Formal Appointment of Personal Representative).  Peggy was
thereafter substituted as the real party in interest in the
pending probate appeal, and she continued to prosecute the appeal
as David's personal representative.  Amended Complaint ¶ 39.

In a decision dated November 20, 2009, the Superior Court

---

[3] Section 33-23-2 provides that:

If an appeal is claimed from an order or decree of a
probate court, the operation of the order or decree shall
be suspended, except as otherwise provided in this
chapter, until the appeal is dismissed or discontinued,
or the order or decree shall be finally affirmed.

R.I. Gen. Laws § 33-23-2 (1995 Reenactment)(2009 Supp.).

denied and dismissed the appeal, affirmed the 2009 Order that vacated the 1995 Decree, reinstated the Will and Codicil, and entered judgment in favor of Nathan and Corinna (the "2009 Judgment").  See id. ¶ 41.  However, because of the transfers made previously, David was insolvent at the time of his death. Id.  David was not capable at the time of his death, and his estate is not capable today, of making restitution to Nathan and Corinna for the remainder of the DVH trust that David received in 2000 based on the 1995 Decree.  See id. at 42.  Thus, any attempt by Nathan and Corinna to obtain restitution from David's estate would be futile.  Id.

On July 28, 2009, Plaintiffs filed the instant complaint (Dkt. #1) in this Court.  The Amended Complaint was filed on November 30, 2009.  As pertains to Peggy, Plaintiffs allege that Peggy breached her fiduciary duties to Nathan and Corinna.  See Amended Complaint ¶¶ 39, 44-50, 53.  They ask that the Court trace the assets received by David in or about June, 2000, that were later transferred to Peggy, charge her as constructive trustee for Nathan and Corinna, and order her to make restitution to them to the fullest extent that she received assets that were intended to be received by Nathan and Corinna.  Id. ¶ 47. Defendant filed the Motion to Dismiss on January 15, 2010, alleging that the Court lacks personal jurisdiction over Peggy and that the Amended Complaint fails to state a claim against

Peggy upon which relief can be granted.   See Motion.[4]

## Discussion

## I.   Personal Jurisdiction

### A.   Burden and Standard

The plaintiffs bear the burden of proving the Court's personal jurisdiction over the defendants.   Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 7 (1st Cir. 2002); Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002); Rodriquez v. Fullerton Tires Corp., 115 F.3d 81, 83 (1st Cir. 1997); see also Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995).   This burden of proof is light, although the plaintiffs may not rely upon the mere allegations of their complaint but must point to specific facts in the record that support the exercise of jurisdiction.   See Jet Wine & Spirits, Inc., 298 F.3d at 8.

"There are several standards that a court can use in

---

[4] In her memorandum, Defendant additionally argues that the Court lacks in rem jurisdiction.   See Memorandum in Support of Margaret Kemp Henry's Motion to Dismiss ("Defendant's Mem.") at 3.   Because the Court finds that it may properly exercise in personam jurisdiction over Peggy, it need not address her argument regarding in rem jurisdiction.   The Court, however, notes the Eleventh Circuit's statement that "where there is an 'interface of in rem and in personam jurisdiction,' a court may properly exercise broad in personam power over the parties to the in rem action."   United States v. One Lear Jet Aircraft, Serial No. 35A-280, Registration No. YN-BVO, 836 F.2d 1571, 1576 (11th Cir. 1988)(quoting Inland Credit Corp. v. M/T Bow Egret, 552 F.2d 1148, 1152 (5th Cir. 1977)).

determining whether the exercise of personal jurisdiction is lawful.  These include the prima facie standard, the preponderance standard, and the likelihood standard." Rodriquez, 115 F.3d at 83 (citing Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675-78 (1st Cir. 1992)); see also Daynard, 290 F.3d at 50-51 ("The district court, faced with a motion to dismiss for lack of personal jurisdiction ... may choose from among several methods for determining whether the plaintiff has met this burden."). Defendant invokes the prima facie standard.  See Memorandum in Support of Margaret Kemp Henry's Motion to Dismiss ("Defendant's Mem.") at 3.  Plaintiffs mention none of the above standards. The Court chooses to utilize the prima facie standard.

The prima facie standard "permits the district court 'to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction.'" Daynard, 290 F.3d at 51 (quoting Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995)(quoting Boit v. Gar-Tec Prods., Inc., 967 F.2d at 675)).  Under this standard, the Court "must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing." Daynard, 290 F.3d at 51 (quoting Foster-Miller, Inc., 46 F.3d at 145).  "To make this prima facie showing, the plaintiff cannot rest upon mere averments, but must

adduce competent evidence of specific facts." <u>Barrett v.
Lombardi</u>, 239 F.3d 23, 26 (1st Cir. 2001); <u>accord</u> <u>Microfibres,
Inc. v. McDevitt-Askew</u>, 20 F.Supp.2d 316, 319-20 (D.R.I. 1998).
The Court takes these facts "as true (whether or not disputed)
and construe[s] them in the light most congenial to the
plaintiff's jurisdictional claim." <u>Daynard</u>, (quoting <u>Mass. Sch.
of Law at Andover, Inc. v. Am. Bar Ass'n</u>, 142 F.3d 26, 34 (1st
Cir. 1998)); <u>see also</u> <u>Northeastern Land Servs., Ltd. v. Schulke</u>,
988 F.Supp. 54, 56 (D.R.I. 1997)("[T]he court does not assume the
role of fact finder, but instead accepts properly supported
proffers of evidence by a plaintiff as true and makes its ruling
as a matter of law.")(internal quotation marks omitted).  It then
"add[s] to the mix facts put forward by the defendants, to the
extent that they are uncontradicted." <u>Daynard</u>, 290 F.2d at 51
(quoting <u>Mass. Sch. of Law at Andover, Inc.</u>, 142 F.3d at 34).

   **B.   Types of Personal Jurisdiction**

   There are two types of personal jurisdiction: general and
specific.  <u>See</u> <u>United Elec., Radio & Mach. Workers of Am. v. 163
Pleasant St. Corp.</u>, 960 F.2d 1080, 1088 (1st Cir. 1992).

   **1.   General Jurisdiction**

   "General jurisdiction exists when the litigation is not
directly founded on the defendant's forum-based contacts, but the
defendant has nevertheless engaged in continuous and systematic
activity, unrelated to the suit, in the forum state." <u>Id.</u>  This

jurisdiction exists only where the defendant's in-state activities "are so substantial and of such a nature that they will justify a lawsuit against [the defendant] on causes of action distinct from those activities." <u>Microfibres, Inc.</u>, 20 F.Supp.2d at 320 (citing <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 66 S.Ct. 154 (1945)). The general jurisdiction standard is considerably more stringent than the standard for specific jurisdiction. <u>See</u> <u>Barry v. Mortgage Servicing Acquisition Corp.</u>, 909 F.Supp. 65, 74 (D.R.I. 1995); <u>see also</u> <u>Daynard</u>, 290 F.3d at 54. "The continuous and systematic requirement has been characterized as being satisfied when the defendant's forum contacts are extensive and pervasive." <u>Barry</u>, 909 F.Supp. at 75 (citations and internal quotation marks omitted).

Defendant argues that "[i]n this case, general jurisdiction over Peggy is clearly lacking." Defendant's Mem. at 5. Plaintiffs do not appear to contend otherwise. <u>See</u> Plaintiff's [sic] Memorandum of Law in Support of Objection to Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim upon which Relief Can Be Granted ("Plaintiffs' Mem.") at 9-12. The Court agrees that general jurisdiction over Peggy is not present.

## 2. Specific Jurisdiction

In the absence of general jurisdiction, a court's power depends upon the existence of specific jurisdiction. <u>Daynard</u>,

290 F.3d at 51.  Specific jurisdiction applies where "the cause of action arises directly out of, or relates to, the defendant's forum-based contacts."  United Elec. Workers, 960 F.2d at 1088-89.  For a court properly to exercise specific personal jurisdiction over the defendant, the requirements of both the state's long-arm statute and the United States Constitution must be satisfied.  See Barrett, 239 F.3d at 26; Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994).  The Rhode Island long-arm statute, as interpreted by the Supreme Court of Rhode Island, is coextensive with federal due process mandates.  See Levinger v. Matthew Stuart & Co., Inc., 676 F.Supp. 437, 439 (D.R.I. 1988) (citing Conn v. ITT Aetna Fin. Co., 252 A.2d 184, 186 (R.I. 1969)); see also Microfibres, Inc., 20 F.Supp.2d at 320. Therefore, Fourteenth Amendment due process requirements determine the exercise of personal jurisdiction in the District of Rhode Island.  See Levinger, 676 F.Supp. at 439; Northeastern Land Servs., Ltd., 988 F.Supp. at 57.

"Due process demands minimum contacts between a nonresident defendant and the forum such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Northeastern Land Servs., Ltd., 988 F.Supp. at 57 (citing Int'l Shoe Co., 326 U.S. at 316).  The First Circuit applies a three-part analysis in evaluating minimum contacts. See Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d

14

284, 288 (1st Cir. 1999); <u>Sawtelle</u>, 70 F.3d at 1388-89.

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities.  Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable.  Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

<u>Sawtelle</u>, 70 F.3d at 1389 (quoting <u>United Elec. Workers</u>, 960 F.2d at 1089).  The "Gestalt factors," <u>id.</u> at 1394, are: "(1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies," <u>id.</u> (citing <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 477, 105 S.Ct. 2174 (1985)).  An affirmative finding on each of the three elements of the test is required to support a finding of specific jurisdiction.  <u>Phillips Exeter Acad.</u>, 196 F.3d at 288.

It is well settled that in determining whether a plaintiff has sustained his burden when confronted with a motion to dismiss for lack of jurisdiction, a court may rely on affidavits and discovery to establish the jurisdictional facts ...." <u>Ben's Marine Sales v. Sleek Craft Boats</u>, 502 A.2d 808, 810 (R.I. 1985).

In doing so, the Court "should consider such evidence in the light most favorable to the nonmoving party."   Id.

C.   **Application**

Plaintiffs contend that "[t]his Court may independently exercise jurisdiction over Peggy based on her voluntary appearance in the recent State Court proceedings," Plaintiffs' Mem. at 9, and also because Peggy committed a tort in Rhode Island, id. at 12.   Therefore, the Court must determine whether Peggy's involvement with the Rhode Island courts during the probate appeal are sufficient to constitute "minimum contacts" with Rhode Island "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Daynard, 290 F.3d at 60 (quoting Int'l Shoe Co., 326 U.S. at 316 (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339 (1940))).   Bearing that standard in mind, the Court proceeds with the constitutional analysis required for specific jurisdiction.   See id.

1.   **Relatedness**

Relatedness requires that the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities.   Daynard, 290 F.3d at 61. Plaintiffs argue that "there is an obvious relationship among the defendant[], the litigation and the forum here."   Plaintiffs' Mem. at 4.   Defendant counters that "there is simply no nexus

between Peggy, Rhode Island and this litigation." Defendant's
Mem. at 6.

Peggy is a citizen of Colorado. <u>See</u> Amended Complaint ¶ 7;
<u>see also</u> Defendant's Mem., Attachment ("Att.")(Declaration of
Margaret Kemp Henry ("Henry Decl.")) ¶¶ 1, 3. However, "in
gauging relatedness, a defendant's contacts with the forum state
are not necessarily limited to moments of physical presence."
<u>Phillips Exeter Acad.</u>, 196 F.3d at 289. Rather, "the action must
directly arise out of the the specific contacts between the
defendant and the forum state." <u>Id.</u> at 290 (quoting <u>Sawtelle</u>, 70
F.3d at 1389).

As detailed previously, Peggy, acting as David's purported
attorney in fact, opposed Nathan's (and subsequently Corinna's)
attempt to reopen Captain Henry's estate and vacate the 1995
Decree. <u>See</u> Amended Complaint ¶ 35. Thereafter, Peggy, again
acting as David's purported attorney in fact, appealed the
Probate Court's 2009 Order to the Superior Court. <u>See</u> <u>id.</u> ¶ 37.
After David's death on February 16, 2009, <u>see</u> <u>id.</u> ¶ 38, a
district court in Colorado appointed Peggy as the Executrix of
David's estate and as his personal representative. <u>See</u> <u>id.</u> ¶ 39.
She was then substituted as the real party in interest in the
pending Rhode Island proceedings and continued to prosecute the
appeal as David's personal representative. <u>See</u> <u>id.</u>

The prior litigation in the Probate Court and Superior Court

17

underlying the instant action took place in Rhode Island.  "The
assets in question ...," Plaintiffs' Mem. at 4, which Plaintiffs
contend Peggy holds in constructive trust, "are of a distinctly
Rhode Island character," id.  The monies which Plaintiffs seek
derived from Captain Henry's Will and Codicil, specifically the
DVH Trust.

Peggy participated in the appeal of the Probate Court's 2009
Order, first as David's purported attorney in fact and
subsequently as his personal representative and Executrix of his
estate.  See Plaintiffs' Mem., Ex. K (Transcript of 7/17/09
Superior Court hearing) at 10-11 (noting that David had passed
away during the pendency of the appeal and that "while
[counsel's] dealings were up to that point in time with his
widow, it was very difficult from that point forward to work or
communicate with her as she was going through a difficult
grieving process ..."); id. at 11 (noting that discussions had
occurred pertaining to settlement of the appeal "at least with
regard to David Henry and his widow"); see also Plaintiffs' Mem.,
Ex. H (Transcript of 11/20/09 Superior Court hearing) at 7-8
(noting that on October 5, 2009, an attorney "filed an entry of
appearance on behalf of Margaret Kemp Henry as personal
representative of the Estate of David Vaugh[a]n Henry and was
substituted under Rule 25 for David Vaugh[a]n Henry on October
16, 2009"); Amended Complaint, Ex. G (Order Admitting Will to

18

Formal Probate and Formal Appointment of Personal
Representative); Henry Decl. ¶ 8.   Although Peggy argues that her
entry of appearance as David's personal representative and
continued prosecution of the appeal "did not give rise to this
cause of action, and is not the type of contact which should give
rise to an exercise of specific jurisdiction," Defendant's Mem.
at 6 (internal footnote omitted), the Court disagrees.   In fact,
Defendant's counsel during the probate appeal (and current
counsel) recognized that "there's always the potential for an
action not only against David Henry's estate but against his wife
to the extent that any of these trust assets were transferred
from David to her."   Plaintiff's Mem., Ex. K at 23.   Moreover,
Peggy's actions in the probate appeal are the basis for
Plaintiffs' breach of fiduciary duty claim, to be discussed
<u>infra</u>, and therefore do give rise to that aspect of the instant
Amended Complaint.

Plaintiffs have not relied on "mere averments," <u>Barrett</u>, 239
F.3d 23, 26 (1st Cir. 2001), but have buttressed their
allegations with copies of the Will and Codicil, the petition to
admit the Will and Codicil to probate, the Sheffield Aff.
presented to the Probate Court, the 1995 Decree, the 2009 Order,
David's will, and the order appointing Peggy as David's personal
representative, <u>see</u> Amended Complaint, Exs. A-G; Plaintiffs'
Mem., Exs. I, L.   Accordingly, the Court concludes that the

19

relatedness prong has been satisfied.

### 2. Purposeful Availment

The defendant's in-state contacts must represent a purposeful availment of the privilege of conducting business in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state courts foreseeable. Daynard, 290 F.3d at 61 (citing Foster-Miller, 46 F.3d at 144).  The cornerstones upon which the concept of purposeful availment rests are voluntariness and foreseeability.  Id. (citing Sawtelle, 70 F.3d at 1391 (citing Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 207 (1st Cir. 1994))).  The Rhode Island Supreme Court "has interpreted McGee [v. Int'l Life Ins. Co., 355 U.S. 220, 78 S.Ct. 1888 (1957)], as standing for the proposition that 'a single act having impact in and connection with the forum state can satisfy the minimum-contact test of International Shoe Co.'"  Ben's Marine Sales v. Sleek Craft Boats, 502 A.2d 808, 812 (R.I. 1985)(quoting Trustees of Sheppard & Enoch Pratt Hosp. v. Smith, 330 A.2d 804, 806 (R.I. 1975)).

Plaintiffs argue that "Peggy actively sought to protect her interests in retaining those assets [from the DVH Trust] by voluntarily appearing in the Rhode Island courts and opposing correction of the manifest irregularities in the entry of the 1995 Decree that effectively disinherited Plaintiffs."

Plaintiffs' Mem. at 4; <u>see also</u> <u>id.</u> at 9 ("This Court may
independently exercise jurisdiction over Peggy based on her
voluntary appearance in the recent State Court proceedings.); <u>id.</u>
at 11 ("Having appeared in the Rhode Island courts to defend the
erroneous transfer of Plaintiffs' inheritance to David and later
to her, Peggy sufficiently submitted herself to the jurisdiction
of the Rhode Island courts to permit complete justice to be done
here."). Defendant states that "Peggy's October entry of
appearance (in her representative capacity) in an appeal that was
resolved approximately six weeks later, did not give rise to this
cause of action, and is not the type of contact which should give
rise to an exercise of specific jurisdiction." Defendant's Mem.
at 6 (internal footnote omitted). The Court disagrees.

"A defendant may manifest consent to a court's *in personam*
jurisdiction in any number of ways, from failure seasonably to
interpose a jurisdictional defense, to express acquiescence in
the prosecution of a cause in a given forum, to submission
implied from conduct." <u>Gen. Contracting & Trading Co.</u>, 940 F.2d
20, 22 (1st Cir. 1991); <u>see also</u> <u>Precision Etchings & Findings,
Inc. v. LGP Gem, Ltd.</u>, 953 F.2d 21, 23 (1st Cir. 1992)(noting
that personal jurisdiction may be acquired by consent or implied
by conduct)(citing <u>Gen. Contracting & Trading Co.</u>); <u>United
States, to the Use of Combustion Sys. Sales, Inc. v. Eastern
Metal Prods. & Fabricators, Inc.</u>, 112 F.R.D. 685, 687 (M.D.N.C.

1986)(noting that waiver of defenses such as lack of personal jurisdiction has been inferred in wide variety of cases, collecting cases, and concluding that "[t]hese cases, while presenting markedly different situations, have the common factors of dilatoriness and participation in, or encouragement of, judicial proceedings").  Although there is no evidence of dilatoriness here, Peggy at least participated in, if not encouraged, the appeal of the 2009 Order vacating the 1995 Decree.  There is no evidence that she did so involuntarily.  See Adam v. Saenger, 303 U.S. 59, 67-68, 58 S.Ct. 454 (1938)("The plaintiff having, by his voluntary act in demanding justice from the defendant, submitted himself to the jurisdiction of the court, there is nothing arbitrary or unreasonable in treating him as being there for all purposes for which justice to the defendant requires his presence.  It is the price which the state may exact as the condition of opening its courts to the plaintiff."); Matkowski v. Bellingham Trading Co., No. 85-2726, 1985 WL 663586, at *2 (R.I. Super. Ct. Sept. 18, 1985)(noting that defendant was not "a totally disinterested witness who had to be dragged into the state to testify" and that "[d]efendant is an interested party in this litigation and his appearance in our court was voluntary").  Thus, the Court finds that the voluntariness factor has been satisfied.

"Even if a defendant's contacts with the forum [state] are

22

deemed voluntary, the purposeful availment prong of the
jurisdictional test investigates whether the dendant benefitted
from those contacts in a way that made jurisdiction foreseeable."
Phillips Exeter Acad., 196 F.3d at 292.   In Conn v. ITT Aetna
Finance Co., 252 A.2d 184 (R.I. 1969), the Rhode Island Supreme
Court found "nothing in the record before [it] which even
remotely suggests that the alleged right which plaintiff asserts
arose in this state.  In short, the trustees did not in any way
purposefully avail themselves of the privilege of conducting
activities within this state and thereby invoke the benefits and
protection of its laws."  Id. at 190.  Here, by contrast, the
alleged right, entitlement to the assets of the DVH Trust, which
Peggy asserted in appealing the 2009 Order arose in Rhode Island
by way of the Probate Court's 1995 Decree regarding Captain
Henry's estate.  She "invoke[d] the benefits and protection of
[Rhode Island's] laws," id., by her voluntary participation in
the Superior Court proceedings.  She cannot now disclaim
jurisdiction in Rhode Island.  Compare Pratt v. Pratt, 431 A.2d
405, 410 (R.I. 1981)("[O]ne who was present and participated in
an initial judicial proceeding cannot collaterally attack the
court's jurisdiction in a later enforcement proceeding ...."),
and Matkowski, 1985 WL 663586, at *3 ("defendant has an
obligation to respond to a suit brought to enforce the very
activities that arose out of these Rhode Island contacts"), with

_Accardi v. Accardi_, 197 A.2d 755, 758 (R.I. 1964)("In thus appearing [to contest jurisdiction] he was not asking for relief from the court or in any way invoking its jurisdiction to aid him."). Unlike the situation in _Accardi_, Peggy sought relief in the Superior Court and invoked its jurisdiction to aid her. Although she was ultimately unsuccessful, the Court finds that it was foreseeable to Peggy, by way of her participation in the Superior Court appeal, that she could be brought to court in Rhode Island in order to enforce the Superior Court's ruling. As noted previously, her attorney foresaw such a possibility. _See_ Plaintiffs' Mem., Ex. K at 23; _cf._ _McGee v. Int'l Life Ins. Co._, 355 U.S. at 224 ("There is no contention that respondent did not have adequate notice of the suit or sufficient time to prepare its defenses and appear."). Thus, the foreseeability factor has been satisfied as well.

Plaintiffs have made a prima facie showing that Defendant voluntarily appeared in Rhode Island Superior Court and that it was foreseeable that she would be haled into court to enforce the Superior Court's ruling. Thus, the Court finds that the purposeful availment prong has been met.

### 3.  Reasonableness

The third prong of the personal jurisdiction analysis, the Gestalt factors, arises after the establishment of minimum contacts and centers on whether the exercise of jurisdiction is

24

reasonable.   See Burger King Corp., 471 U.S. at 476-77, 105 S.Ct. 2174.   Reasonableness equates with "fair play and substantial justice."   Id. at 476, 105 S.Ct. 2174 (citing Int'l Shoe Co., 326 U.S. at 320, 66 S.Ct. 154).

This third portion of the jurisdictional test is not inflexible and varies in accordance with the strength of the first two parts.   That is, "the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction."   Ticketmaster-New York, Inc., 26 F.3d at 210.   On the other hand, "an especially strong showing of reasonableness may serve to fortify a borderline showing of relatedness and purposefulness."   Id.

### a. Defendant's Appearance Burden

In terms of the burden of defending this suit in Rhode Island, "this factor is only meaningful where a party can demonstrate some kind of special or unusual burden."   Pritzker, 42 F.3d at 64.   Peggy is a resident of Colorado.   See Amended Complaint ¶ 7.   However, that fact did not prevent her from participating in the appeal of the 2009 Order, and it should not prevent her participation in the instant matter.

### b. Forum State's Interest

In determining Rhode Island's interest in adjudication, this Court should assess its legitimacy and "not ... *compare* [its]

25

interest to that of some other jurisdiction ...." <u>Foster-Miller, Inc.</u>, 46 F.3d at 151 (citing <u>Burger King Corp.</u>, 471 U.S. at 483 n.26, 105 S.Ct. 2174), for the proposition that two forums may simultaneously have legitimate interests in the dispute's resolution).  Rhode Island clearly has an interest in correcting mistakes arising from adjudications made by its judicial system. Here, had the Probate Court not erroneously altered Captain Henry's Will and Codicil, the terms of the DVH trust would have not been altered, the funds would not have been transferred to David (and, subsequently, to Peggy), and Nathan and Corinna would have received their inheritance from their grandfather.[5]

### c. Plaintiff's Interest in Relief

The aim of this factor is to ensure that Plaintiff is able to obtain "convenient and effective relief." <u>Pritzker</u>, 42 F.3d at 64.  To achieve this end, a court must generally "accord plaintiff's choice of forum a degree of deference in respect to the issue of its own convenience ...." <u>Id.</u> (citing <u>Ticketmaster-New York, Inc.</u>, 26 F.3d at 211.  Since the underlying litigation which gave rise to this action occurred in Rhode Island, it is

---

[5] During the July 17, 2009, hearing in Superior Court, Defendant's counsel argued that, even if the Will and Codicil had not been altered by the 1995 Decree, "what would have happened here is, the trustee, under the power that he had in the codicil as drafted, would simply have paid the entire corpus of the trust to David anyway." Plaintiffs' Mem., Ex. K at 10.  That argument was rejected, as the Superior Court denied and dismissed the appeal from the Probate Court. <u>See</u> Plaintiffs' Mem., Ex. H at 20.

logical for Plaintiffs to turn to Rhode Island's courts, including this one,[6] for relief.

### d. Judicial System's Interest

The key to applying this factor is ensuring "the most effective resolution of the controversy." <u>Sawtelle</u>, 70 F.3d at 1395.  The controversy between Plaintiffs and Defendant will be most effectively resolved within the confines of a single judicial action, rather than having parallel proceedings in both Rhode Island (against the remaining Defendants) and Colorado (against Peggy).  Determination of the issues raised in Plaintiffs' Amended Complaint in one forum conserves judicial resources and eliminates the risk of conflicting judgments.

### e. States' Common Interest

To the extent that this factor is applicable, the court which is most concerned with a controversy should adjudicate the dispute.  Of the possible locations for this action, Rhode Island, New Mexico (where Plaintiffs reside, <u>see</u> Amended Complaint ¶¶ 1-2), and Colorado, it appears that Rhode Island has the greatest connection with the controversy and should adjudicate it.

---

[6] "In the context of personal jurisdiction, it is settled that the concept of a 'state's courts' includes those federal courts located within the state." <u>Gen. Contracting & Trading Co. v. Interpole, Inc.</u>, 940 F.2d 20, 23 n.4 (1st Cir. 1991)(citing <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770, 775-77, 104 S.Ct. 1473 (1984)).

### f. Summary Re Gestalt Factors

None of the Gestalt factors weighs against the application of jurisdiction.

### 4. Finding Re All Factors

The Court concludes that Peggy's actions in opposing and appealing the 2009 Order constitute minimum contacts with Rhode Island "such that the maintenance of th[is] suit does not offend 'traditional notions of fair play and substantial justice.'" Daynard, 290 F.3d at 63 (quoting Int'l Shoe Co., 326 U.S. at 316 (quoting Milliken, 311 U.S. at 463)).  The Court reaches this conclusion utilizing the prima facie approach, taking Plaintiffs' properly documented evidentiary proffers as true, whether disputed or not, and construing them in the light most congenial to Plaintiffs' jurisdictional claim.  See id.  In particular, the Court finds that it does not "offend traditional notions of fair play and substantial justice," Int'l Shoe, 326 U.S. at 316. 66 S.Ct. 154 (internal quotation marks omitted), to subject Peggy to jurisdiction in Rhode Island where Peggy deliberately sought to use the Rhode Island courts to defeat distribution of the DVH Trust as written in Captain Henry's Will and Codicil, even though her efforts were ultimately unsuccessful.  Accordingly, Defendant's Motion to Dismiss based on lack of personal jurisdiction should be denied, and I so recommend.

## II.  Failure to State a Claim

28

### A.   Law

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must view the stated facts in the light most favorable to the pleader, In Re Credit Suisse First Boston Corp., 431 F.3d 36, 51 (1st Cir. 2005); see also Greater Providence MRI Ltd. P'ship v. Medical Imaging Network of S. New England, Inc., 32 F.Supp.2d 491, 493 (D.R.I. 1998), taking all well-pleaded allegations as true and giving the pleader the benefit of all reasonable inferences that fit the pleader's stated theory of liability, Redondo-Borges v. U.S. Dep't of Housing & Urban Development, 421 F.3d 1, 5 (1st Cir. 2005); see also Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002).  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949 (2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id.; see also Bell Atlantic Corp., 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level ....").  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations, Bell

Atlantic Corp., 550 U.S. at 555; see also Ashcroft, 129 S.Ct. at 1949, "a pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" Ashcroft, 129 S.Ct. at 1949 (quoting Bell Atlantic Corp., 550 U.S. at 555).

Moreover, the Court is not required to "credit bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Aponte-Torres v. Univ. of Puerto Rico, 445 F.3d 50, 54 (1st Cir. 2006)(internal quotation marks omitted); see also Ashcroft, 129 S.Ct. at 1949 ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'")(quoting Bell Atlantic Corp., 550 U.S. at 557))(alteration in original).  Rule 12(b)(6) is forgiving, see Campagna v. Massachusetts Dep't of Envtl. Prot., 334 F.3d 150, 155 (1st Cir. 2003), but it "is not entirely a toothless tiger," Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005)(quoting Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 67 (1st Cir. 2004)(quoting Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989))). A plaintiff must allege facts in support of "each material element necessary to sustain recovery under some actionable legal theory." Campagna, 334 F.3d at 155.

## B.  Application

Plaintiffs allege that Peggy breached her fiduciary duty to

Nathan and Corinna as Executrix of David's estate.  See Amended
Complaint ¶¶ 39-49, 53.  Acording to Plaintiffs, Peggy did so by
prosecuting the probate appeal in Superior Court,

> which appeal is contrary to the dispositive provisions of
> David's will designating Corinna and Nathan as the sole
> beneficiaries of David's Estate.  Peggy's prosecution of
> the Probate Appeal did not serve or advance any interest
> of David's Estate but rather was to protect her own
> personal interests by defeating Nathan and Corinna's
> attempt to recover their rightful inheritance under
> Captain Henry's Will and Codicil.

Amended Complaint ¶ 53; see also id. ¶ 40 ("Peggy prosecuted the
Probate Appeal as David's personal representative, not because it
was in the interest of David's probate estate, but because it
served her self-interest to defeat Corinna's and Nathan's
recovery of their inheritances which had been transferred to her
through David.").  Defendant counters that she owed no fiduciary
duty to Nathan and Corinna at the time the probate appeal was
filed, that she breached no duty, and that no damages resulted.
See Defendant's Mem. at 7; see also id. ("The probate appeal
involved Captain Henry's estate, not David's, and Peggy owed no
duty to Plaintiffs regarding Captain Henry's estate."); Henry
Decl. ¶¶ 4-5 (noting that Peggy "was not involved in any way in
the administration of" Captain Henry's estate or the DVH Trust).

The Court finds that Plaintiffs have stated a valid breach
of fiduciary duty claim against Peggy based on her actions in
prosecuting the probate appeal in her own name, as David's
personal representative, after his death in 2009.  While Peggy

31

initially opposed vacation of the 1995 Decree on David's behalf, subsequent to his death she prosecuted the appeal in her own name, arguing against the interests of Plaintiffs.  Her argument that she owed no fiduciary duty to Nathan and Corinna at the time the probate appeal was filed is unpersuasive.

Although "Defendant submits that she could not have committed a breach of her fiduciary duty as executor by actions that had nothing to do with David's estate, or her duties as executor thereof," Defendant Margaret Kemp Henry's Reply to Plaintiff's [sic] Objection to Defendant's Motion to Dismiss ("Defendant's Reply") at 3, the very statute Peggy cites in Defendant's Reply, see id., undermines her argument.  Section 15-1-509 of the Colorado Revised Statutes provides that:

> In the exercise of any of the powers granted in this part 5, **a fiduciary has a duty to act reasonably and equitably with due regard for his obligations and responsibilities toward the interests of beneficiaries and creditors and the estate or trust involved and the purposes thereof** and with due regard for the manner in which men of prudence, discretion, and intelligence would act in the management of the property of another.

Colo. Rev. Stat. § 15-1-509 (2010)(bold added); see also Fry & Co. v. Dist. Ct. in & for County of Adams, 653 P.2d 1135, 1137 (Colo. 1982)(noting that personal representative has "the same power over the title to property of the estate that an absolute owner would have, **in trust however, for the benefit of the creditors and others interested in the estate**")(bold added); cf.

<u>Colorado Nat'l Bank of Denver v. Friedman</u>, 846 P.2d 159, 173 (Colo. 1993)(noting fact that a fiduciary relationship exists between a personal representative and the beneficiaries of an estate); <u>Fry & Co.</u>, 653 P.2d at 1137 (noting that Colorado Fiduciaries' Powers Act grants personal representatives broad powers as fiduciaries). The Court, therefore, finds that Plaintiffs' argument that "[b]y opposing vacation of the 1995 [D]ecree and prosecuting a meritless probate appeal in Rhode Island that served no one's interests other than her own, Peggy breached a fiduciary duty to Nathan and Corinna," Plaintiffs' Objection at 12, has merit, <u>see</u> <u>Phillips Exeter Acad.</u>, 196 F.3d at 291 ("A breach of fiduciary duty occurs where the fiduciary acts disloyally.").

By opposing Nathan's and Corinna's attempts to receive their inheritance under Captain Henry's Will and Codicil, Peggy clearly was not acting with due regard for the interests of Nathan and Corinna, the sole beneficiaries of David's estate. Their ability to recover the money which they contend they were wrongfully denied has at least been delayed. They have incurred additional costs and legal expenses in their effort to uphold the Superior Court's judgment in their favor, vacation of the 1995 Decree, and reinstatement of Captain Henry's Will and Codicil. Moreover, as Plaintiffs note, <u>see</u> Plaintiffs' Mem. at 12, "[t]he remedy for improper exercise of power by a personal representative is an

action for damages for the resulting losses," <u>Fry & Co.</u>, 653 P.2d at 1137, which is what they have filed in this Court.

Accordingly, the Court finds that Plaintiffs have stated a claim for breach of fiduciary duty against Peggy.  Plaintiffs have pled sufficient factual content to allow the Court to draw the reasonable inference that Defendant is liable for the misconduct alleged.  <u>See</u> <u>Ashcroft</u>, 129 S.Ct. at 1949.  Thus, I recommend that the Motion to Dismiss based on Fed. R. Civ. P. 12(b)(6) be denied.

### Summary

The Court finds that it may properly exercise personal jurisdiction over Defendant.  The Court further finds that Plaintiffs have stated a breach of fiduciary duty claim against Defendant.  I therefore recommend that the Motion to Dismiss be denied.

### Conclusion

For the foregoing reasons, I recommend that the Motion to Dismiss be denied.  Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt.  <u>See</u> Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision.  <u>See</u> <u>United States v. Valencia-Copete</u>,

34

792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford</u>

<u>Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).




<u>/s/ David L. Martin</u>
David L. Martin
United States Magistrate Judge
August 13, 2010