```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF RHODE ISLAND
```

_____
                                            )
NATHAN HENRY;                               )
CORINNA LASZLO-HENRY,                       )
        Plaintiffs,                         )
                                            )
        v.                                  )   C.A. No. 09-332 S
                                            )
RICHARD B. SHEFFIELD; BRIAN G. BARDORF;     )
WILLIAM R. HARVEY; QUENTIN ANTHONY;         )
MARY JO CARR; HARVEY CARR & HADFIELD;       )
DOUGLAS DAVIES HENRY; MARGARET KEMP         )
HENRY; individually and as Executrix of     )
the Estate of David Vaughan Henry and       )
as constructive trustee over certain        )
property for the benefit of Nathan          )
Henry and Corinna Laszlo-Henry,             )
        Defendants.                         )
_____)


**OPINION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

Before the Court is a motion for partial summary judgment filed by Defendants Richard B. Sheffield, Brian G. Bardorf, William R. Harvey, Quentin Anthony, Mary Jo Carr, and Harvey Carr & Hadfield (collectively, the "Movant Defendants"). (Defs.' Mot. Partial Summ. J., ECF No. 31.) The Movant Defendants move for summary judgment as to all claims asserted against them by Plaintiff Corinna Laszlo-Henry ("Plaintiff" or

"Corinna").[1]  For the reasons set forth below, the motion is granted in part and denied in part.

I. Background

The Court's brief recitation of facts begins with Captain Eugene Henry ("Captain Henry"), who executed a will on August 21, 1992 (the "1992 will"). Captain Henry's 1992 will provided that trusts be established for his two sons – Defendant Douglas Davies Henry ("Doug") and David Vaughan Henry ("David"). (Ex. A to Defs.' Statement of Undisputed Facts 2, ECF No. 32.) David is the father of Plaintiff Corinna and co-Plaintiff Nathan Henry.

The terms of the two trusts were not identical. Doug was to receive trust income for five years after Captain Henry's death and would thereafter receive the corpus. (Id. at 3.) David, on the other hand, would receive trust income for life, and upon David's death, the corpus would pass to his living "descendants." (Id. at 2-3.)

On December 2, 1994, Captain Henry executed a codicil to his will (the "1994 codicil"), which modified the terms of David's trust. Pursuant to the 1994 codicil, David would receive income for five years, after which the corpus would be distributed to his living "descendants." (Ex. 6 to Pl.'s

---

[1] Because many of the parties in this action share the same last name, the Court refers to those individuals by first name.

2

Statement of Undisputed Facts 2, ECF No. 35-6.) What remains in dispute is Captain Henry's intent in executing the codicil – while Defendants contend that Captain Henry intended to make David's trust mirror Doug's trust, the codicil as drafted did not have that effect.

Captain Henry died on June 21, 1995. On July 10, 1995, Defendant Doug filed a petition to open a probate estate in the Portsmouth Probate Court. Appended to that petition was an affidavit sworn by Defendant Sheffield, the attorney who drafted the 1994 codicil. (Ex. C, ECF No. 32.) Sheffield averred that "certain words [in the 1994 codicil] were omitted inadvertently from the second paragraph of the David Vaughn [sic] Henry Trust" (id. at ¶ 7) and that he could "unequivocally state that Eugene B. Henry intended that his sons, David and Douglas, with respect to the net income from their respective trusts, were to be treated equally." (Id. at ¶ 8.) In his affidavit, Sheffield also provided text "to accurately reflect the intention of Eugene B. Henry," which provided that David would receive income for five years and would thereafter receive the corpus. (Id. at ¶ 9.) It is undisputed that Plaintiffs Corinna and Nathan did not receive notice of these probate proceedings. (Pl.'s Undisputed Facts ¶ 53, ECF No. 35.)

On July 11, 1995, a decree (the "1995 decree") entered in the Portsmouth Probate Court, in which the court (1) admitted

3

the 1992 will to probate; (2) found that the 1994 codicil erroneously omitted certain words that Captain Henry intended to include; and (3) corrected and amended the 1994 codicil to conform to the intention of Captain Henry by substituting the language contained in Sheffield's affidavit. (Ex. D, ECF No. 32.) Thereafter, a trust was created for David – he received income for five years, and the corpus was disbursed to him in June of 2000.

In the fall of 2004, Plaintiff Corinna "learned . . . that changes that might concern her had been undertaken in the probate of her grandfather's will." (Pl.'s Undisputed Facts ¶ 62, ECF No. 35.) Corinna contacted the Portsmouth Probate Court in December of 2004 or January of 2005, and she received a copy of the probate court file from the clerk in February of 2005. (Id. at ¶ 63.)

More than three years later, on November 20, 2008, co-Plaintiff Nathan filed a motion in the Portsmouth Probate Court to reopen the estate and vacate the 1995 decree. (Ex. F, ECF No. 32.) The 1995 decree was vacated on January 1, 2009, a decision which was unsuccessfully appealed to the Superior Court. David died shortly thereafter on February 16, 2009, survived by his wife Defendant Margaret "Peggy" Kemp Henry.

On July 28, 2009, Plaintiffs Nathan and Corinna filed the instant action. In their Amended Complaint, Plaintiffs set

4

forth the following claims: (1) Count I, Restitution, against Defendant Peggy; (2) Count II, Breach of Fiduciary Duty, against Defendants Sheffield, Doug, and Peggy; (3) Count III, Tortious Interference with Inheritance, against Defendants Sheffield and Doug; (4) Count IV, Legal Malpractice, against Defendants Sheffield and Harvey; (5) Count V, Negligence, against Defendant Sheffield; (6) Count VI, Fraud, against Defendant Sheffield; and (7) Count VII, Vicarious Liability, against Defendants Sheffield, Bardorf, Harvey, Anthony, Carr, and the law firm of Harvey Carr & Hadfield. (Am. Compl., ECF No. 12.)

The Movant Defendants, which are those defendants implicated in Count VII,[2] have moved for summary judgment against Plaintiff Corinna[3] on all counts, except Count I.[4] As to Count III, tortious interference with inheritance, the Movant Defendants argue that it is not a viable claim under Rhode Island law. As to Counts II, IV, V, and VI, Defendants contend that Plaintiff Corinna's claims are barred by the applicable statutes of limitations.

---

[2] Defendants Doug and Peggy are not parties to this motion.

[3] Defendants do not move for summary judgment against co-Plaintiff Nathan.

[4] While the Movant Defendants' motion does not refer to Count VII, Vicarious Liability, they note in their memorandum in support that, if the other counts are dismissed, then Count VII should also be dismissed, arguing that there can be no vicarious liability where there is no primary liability. (Mem. of Law in Support of Def.' Mot. Summ. J. 5 n.4, ECF No. 31.)

II. Discussion

    A.    Legal Standard

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact, thereby entitling the moving party to judgment as a matter of law. Morelli v. Webster, 552 F.3d 12, 18 (1st Cir. 2009).

    B.    Tortious Interference with Inheritance

The Rhode Island Supreme Court has not yet had occasion to address the question of whether a cause of action lies for tortious interference with inheritance under Rhode Island law. Accordingly, in borrowing Rhode Island law for this particular question, the Court must make "an informed prophecy of what [that] court would do in the same situation," seeking "guidance in analogous state court decisions, persuasive adjudications by courts of sister states, learned treatises, and public policy considerations identified in state decisional law." Blinzler v. Marriott Int'l, Inc., 81 F.3d 1148, 1151 (1st Cir. 1996). "As long as these signposts are legible, [this Court's] task is to ascertain the rule the state court would most likely follow under the circumstances, even if [the Court's] independent judgment on the question might differ." Id.

The First Circuit made just such an informed prophecy on this very question in Umsted v. Umsted, 446 F.3d 17 (1st Cir.

2006). In Umsted, the court determined that "Rhode Island would adopt the majority position that a cause of action for tortious interference with an expectancy of inheritance, *if it lies at all*, would not lie where an adequate statutory remedy is available but has not been pursued." Id. at 22 (emphasis added). Plaintiff has presented no argument to support a departure from Umsted.

Accordingly, as in Umsted, the "question remains, then whether the Probate Court offered [Plaintiff] an adequate remedy." Id. A Rhode Island statutory provision entitled "Action in name of estate prosecuted by interested person," provides as follows:

> If an administrator, executor, or guardian shall be requested by any person legally interested in the estate of a deceased person, . . . to commence an action or proceeding to recover any property, personal or real, which the legally interested person may have reason to believe should be recovered for the benefit of the estate, and if the administrator, executor, or guardian shall, for fifteen (15) days after written notice so to do, . . . refuse, neglect or for any reason be incompetent, to commence the action or proceeding, the legally interested person may institute proceedings in the name of the estate of the deceased person, or person under guardianship, in the same manner and to the same extent as the administrator, executor, or guardian may do . . . .

R.I. Gen. Laws § 33-18-17. As legatees under Captain Henry's will, as well as intestate heirs, there is no question that Plaintiffs Corinna and Nathan qualify as persons "legally interested in the estate of a deceased person." See Umsted, 446

7

F.3d at 23. Accordingly, in their capacity as beneficiaries of Captain Henry's estate, Plaintiffs "had standing to bring the state court action for what [they] perceive[] to be 'the benefit of the estate' and [their] interest in it." Haffenreffer v. Coleman, C.A. No. 06-299T, 2007 WL 2972575, at *3 (D.R.I. Oct. 10, 2007) (emphasis added).

In Umsted, the court held that the statute could have been utilized to recover real property that, according to the plaintiffs, had been wrongfully conveyed out of the estate prior to the death of the testator. Umsted, 446 F.3d at 23. And the court further observed that, "[i]f successful, the property would have been returned to the estate, where it would then have passed pursuant to the terms of [the] will." Id. Plaintiff first argues that Umsted is distinguishable because the "wrongful conduct" in the instant case, viz., the successful efforts to amend the codicil during the probate proceedings, occurred after the death of Captain Henry. And while it may be true that Umsted is factually distinguishable in that respect, the plain language of the statute itself contains no such limitation. See R.I. Gen. Laws § 33-18-17. The statute contemplates that it may be used "to recover any property, personal or real, which the legally interested person may have reason to believe should be recovered for the benefit of the

estate." Id. It is absolutely silent as to when that property may have left the estate.

Plaintiff next argues that the statute is inapplicable because the claim does not belong to Captain Henry's estate but belongs instead to her and Nathan. Plaintiff has cited no authority in support of the proposition that an action to recover property distributed in accordance with an allegedly improper modification of a codicil to a will would not be "for the benefit of the estate." Moreover, "[w]hile R.I. Gen. Laws § 33-18-17 permits an interested beneficiary to sue 'in the name of' an estate, it does not convert such a suit into a suit by the estate." Haffenreffer, 2007 WL 2972575, at *4 (emphasis in original). To the extent that certain of Captain Henry's estate assets were disbursed pursuant to an improper amendment to his will and codicil, an action to recover that property would certainly be for the benefit of the estate, as a means of carrying out Captain Henry's testamentary intent, even if it would also benefit Plaintiffs Corinna and Nathan. Coupled with Nathan's successful motion to vacate the 1995 decree, Section 33-18-17 would have provided an adequate vehicle to pursue recovery of the property that had been disbursed pursuant to that decree.

C.  Statutes of Limitations

The Movant Defendants argue that Corinna's claims for breach of fiduciary duty, legal malpractice, negligence, and fraud are all barred by the applicable statutes of limitations.

1.  The Probate Exception

Corinna first argues that, because this matter was subject to the probate exception, she could not have asserted these claims before the probate court vacated the 1995 decree. The Supreme Court has described the probate exception as follows:

> [T]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

Marshall v. Marshall, 547 U.S. 293, 311-12 (2006). In Marshall, the Supreme Court expressly held that a claim for tortious interference with an expectancy of inheritance was not subject to the probate exception. Id. at 312. Much like that claim, the other claims asserted by Plaintiff in this case (1) seek in personam judgments against individual Defendants, and "not the probate or annulment of a will," id.; (2) do not "involve the administration of an estate, the probate of a will, or any other purely probate matter," id. (quoting Marshall v. Marshall (In re Marshall), 392 F.3d 1118, 1133 (9th Cir. 2004)); and (3) do not

seek "to reach a res in the custody of a state court." Id. Moreover, "no 'sound policy considerations' militate in favor of extending the probate exception to cover the case at hand" and state probate courts do not possess any special proficiency in handling these types of claims. Id. Accordingly, these claims are not subject to the probate exception.

2. Equitable Tolling and Equitable Estoppel

Corinna's second line of defense is that the doctrines of equitable tolling and equitable estoppel should apply.[5] In Rhode Island, "equitable tolling is an exception to the general statute of limitations . . . and is available to litigants <u>who suffer from debilitating mental incapacity</u>." <u>Johnson v. Newport Cnty. Chapter for Retarded Citizens, Inc.</u>, 799 A.2d 289, 292 (R.I. 2002) (emphasis added). Since Plaintiff Corinna does not claim to have suffered from a "debilitating mental incapacity," and offers no authority to support an expansion of this doctrine, it is of no aid to her. See id.

---

[5] While Plaintiff cites authority from a number of federal circuit courts of appeals (with no objection from Defendants on the choice of law), state law governs the applicability of these doctrines. See Wright & Miller, Federal Practice and Procedure § 1056 at 244-46 ("In diversity of citizenship cases, however, state law governs the tolling of the statute of limitations under the doctrine of Erie Railroad Company v. Tompkins and its progeny." (internal footnote omitted)); cf. <u>Chico-Velez v. Roche Prods., Inc.</u>, 139 F.3d 56, 58 n.3 (1st Cir. 1998) ("Given that the relevant limitation period originates in a federal statute, the issue of equitable tolling is governed by federal law.").

11

Equitable estoppel may be applied "to stop the running of the statute of limitations as a defense where the particular facts warrant its application." Wolf v. S.H. Wintman Co., 169 A.2d 903, 905 (R.I. 1961); see also Gross v. Glazier, 495 A.2d 672, 673 (R.I. 1985). However, "application requires more than mere inaction or silence by a person who has no obligation to speak or act . . . ." Wolf, 169 A.2d at 905. Put another way, the doctrine can also be applied in the context of inaction or silence by a person who has a duty to speak or act. See id.

Here, it is clear that such a duty existed. When Defendants Sheffield and Doug attempted to reform the will and codicil in their petition to probate the will, the proceedings were essentially transformed into a reformation action or a limited will contest on a mistake theory. By the terms of the will and codicil, as written at the time of Captain Henry's death, Plaintiffs Corinna and Nathan had an interest in Captain Henry's estate and were necessary parties to a reformation action, the goal of which was to eliminate that interest. See R.I. Gen. Laws § 33-22-4[6]; cf. Indus. Trust Co. v. Harrison, 21

---

[6] Section 33-22-4 provides in pertinent part as follows:

Whenever, in any proceeding pending in probate court for the probate of a will, it appears to the court that the probate of the will . . . is to be contested . . . , the court shall forthwith cause to be entered upon its records an order requiring the petitioner to file with the clerk of court the same information

A.2d 254, 255 (R.I. 1941) ("All necessary parties are before the court and have filed answers. A guardian ad litem was appointed by the superior court for minor respondents, and also a representative for persons not in being and for <u>unascertained and contingent interests</u>." (emphasis added)). Accordingly, equitable estoppel applies to stop the running of the statutes of limitations against Plaintiff Corinna.

### 3. Breach of Fiduciary Duty, Legal Malpractice, and Negligence

Defendants contend that, under Rhode Island law, Plaintiffs' claims for breach of fiduciary duty and negligence are subject to the three-year statute of limitations applicable to legal malpractice claims.

In Rhode Island, "[a] claimant cannot evade . . . time bars merely by failing to mention the word 'malpractice' when drafting the pleading in question." <u>Bowen Court Assocs. v. Ernst & Young, LLP</u>, 818 A.2d 721, 727 (R.I. 2003). Where "negligence claims against professional defendants challenge the quality, effectiveness, nature, or propriety of the professional services rendered, such claims are subject to the applicable malpractice statute of limitation, regardless of whether the

---

relative to legatees and devisees . . . as is required relative to a surviving spouse and heirs at law; and the petitioner or his or her attorney shall give or cause notice to be given to those legatees and devisees . . . .

13

claimants can establish contractual or professional privity with the professional defendants." Id. Here, since Plaintiffs' claim for negligence challenges the "quality, effectiveness, nature, or propriety of the professional services rendered" by Defendant Sheffield, it is subject to the same statute of limitations as Plaintiffs' legal malpractice claim.

Similarly, "[a] claim by a client against an attorney for breach of fiduciary duties is a claim for legal malpractice." Cronan v. Iwon, 972 A.2d 172, 175 (R.I. 2009) (mem.) (holding breach of fiduciary duty claimant to same expert evidentiary requirements as legal malpractice claimant). If a breach of fiduciary duty claim in this context is "a claim for legal malpractice," it follows that it should be subject to the same statute of limitations. See id.

Legal malpractice claims are subject to a three-year statute of limitations, with a discovery rule, which provides as follows:

> In respect to those injuries due to acts of legal malpractice which could not in the exercise of reasonable diligence be discoverable at the time of the occurrence of the incident which gave rise to the action, suit shall be commenced within three (3) years of the time that the act or acts of legal malpractice should, in the exercise of reasonable diligence, have been discovered.

R.I. Gen. Laws § 9-1-14.3(2). It is undisputed that Plaintiff Corinna learned in the fall of 2004 that a change was made to

Captain Henry's will (or to the codicil) that affected her interests. It is also undisputed that she received the entire probate court file in February of 2005. Accordingly, at the latest in February of 2005, any claims for breach of fiduciary duty, legal malpractice, or negligence, could have been discovered by her "in the exercise of reasonable diligence." And since the instant action was not filed until more than four years later, in July 2009, those claims are barred.

    4. Fraud

The parties are in agreement that Plaintiffs' claim for fraud is subject to Rhode Island's catchall ten-year statute of limitations.[7] However, as determined supra, equitable estoppel applies to stop the running of the statute of limitations until Plaintiff Corinna's discovery in February of 2005. Since suit was filed within ten years of that time, Corinna's fraud claim may proceed.

---

[7] Defendants contend that R.I. Gen. Laws § 9-1-20 is not applicable to this case to toll the statute of limitations. Section 9-1-20 provides as follows:

> If any person, liable to an action by another, shall fraudulently, by actual misrepresentation, conceal from him or her the existence of the cause of action, the cause of action shall be deemed to accrue against the person so liable at the time when the person entitled to sue thereon shall first discover its existence.

Plaintiff, on the other hand, does not counter that this provision is applicable. Accordingly, the Court considers any argument as to the applicability of Section 9-1-20 waived.

15

III. Conclusion

For the reasons set forth in this opinion, Defendants' motion for partial summary judgment is GRANTED in part and DENIED in part. All claims asserted by Plaintiff Corinna against the Movant Defendants, except for the fraud and vicarious liability claims, are hereby DISMISSED.

IT IS SO ORDERED.

*/s/ William E. Smith*
William E. Smith
United States District Judge
Date: April 16, 2012